IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2228-WJM-NYW

VICTOR DIAZ, on his own behalf
and on behalf of all others similarly situated,

    Plaintiff,

v.

LOST DOG PIZZA, LLC,
DANIEL WARREN LYNCH, and
JEFF SMOKEVITCH,

    Defendant.
_____

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**
_____

Before the Court is the parties' Joint Motion for Final Approval of Class and Collective Action Settlement ("Joint Motion") and Plaintiff's Motion for Attorney Fee ("Fee Motion"). (ECF No. 43 & 44.) The Court held a settlement fairness hearing ("Settlement Hearing") on May 15, 2019. Considering the arguments raised at the Settlement Hearing and in the Joint Motion and Fee Motion, and for the reasons set forth below, the Court grants the Joint Motion and Fee Motion, and approves the Settlement Agreement (ECF No. 43-1), including an incentive payment for Plaintiff Victor Diaz and reasonable attorneys' fees and costs.

## I. BACKGROUND

On September 14, 2017, Plaintiff Victor Diaz filed this lawsuit as a putative collective and class action against Defendant Lost Dog Pizza, LLC (d/b/a Brown Dog

Pizza), and its owners and managers, Daniel Warren Lynch and Jeff Smokevitch (collectively, "Defendants"). (ECF No. 1.) Plaintiff, on behalf of himself and others ("pizza workers")—all hourly employees at Defendants' pizzeria from 2014 onward—alleges that Defendants failed to properly compensate pizza workers for overtime hours under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), Colo. Rev. Stat. §§ 8-6-101 *et seq.* For example, Plaintiff alleges that he worked 107.67 hours from July 16–31, 2015, and 99.61 hours from September 5–18, 2016, and that Defendants failed to pay him overtime as required during those periods. (ECF No. 1 ¶ 17.) He also alleges that Defendants subjected all pizza workers to a "common policy of refusing to pay overtime wages for hours worked beyond forty each workweek and beyond twelve each workday." (*Id.* ¶¶ 18, 29.)

On June 19, 2018, the Court certified a Rule 23 class for the CMWA claims, and conditionally certified a collective action under the FLSA. (ECF No. 30.) The difference between the class definition and the collective action definition is simply the respective timeframe.[1] The Rule 23 class includes employees from September 14, 2015, onward,

---

[1] The FLSA collective action class is defined as:

> All hourly employees who worked at Brown Dog Pizza on or after September 14, 2014 and who were not paid overtime wages for overtime hours worked.

(ECF No. 30 at 12.) The Rule 23 Class is defined as:

> All hourly employees who worked at Brown Dog Pizza on or after September 14, 2015 and who were not paid overtime wages for overtime hours worked.

(*Id.*)

2

whereas the FLSA action covers pizza workers as of September 14, 2014. (*Id.* at 12.) At that time, the Court approved a revised version of the proposed FLSA Notice and Consent to Join and directed notice to potential collective action members. (*Id.* at 10–11.) However, the Court denied, without prejudice to refiling, the parties' proposal to notify class members of a settlement because the full details of the proposed settlement were not before the Court. (*Id.* at 11.)

Plaintiff filed a Notice of Completion of Mailing of the FLSA opt-in notices on July 2, 2018. (ECF No. 33.) According to the parties, three potential FLSA plaintiffs returned consent to join forms. (ECF No. 43 at 2.)

After the opt-in period closed in August 2018, the parties concluded settlement negotiations and moved for preliminary approval of a class and collective action settlement. (ECF No. 37.) This time, the Court granted preliminary approval, ordered notice to class members, set deadlines for opt-out forms and objections, and scheduled the Settlement Hearing for May 15, 2019. (ECF No. 40.) On January 2, 2019, Defendants filed a Notice of Completion of Mailing of the class settlement notice. (ECF No. 42.)

On April 10, 2019, the parties filed the Joint Motion and Plaintiff filed the Fee Motion. (ECF No. 43 & 44.) The Court held the Settlement Hearing on May 15, 2019. (ECF No. 45.)

## II. SETTLEMENT AGREEMENT ANALYSIS

In deciding whether to approve a settlement in class action, a court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ.

P. 23(e)(2). Courts consider four factors in evaluating the settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). The Court may also consider the fact that no objections were filed by any class members. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out. One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing. No objection was raised at the fairness hearing. The Court gives these factors substantial weight in approving the proposed settlement.").

Having thoroughly reviewed the Joint Motion and the Settlement Agreement, the Court finds that the settlement negotiated by counsel is fair, reasonable, and adequate. With regard to the four factors, the parties have demonstrated that the Settlement Agreement was negotiated at arms' length by counsel experienced in these types of cases. The parties engaged in informal discovery, undertook a detailed review of Defendants' billing records, and negotiated settlements amounts for each class or

collective action member as well as a *cy pres* award for unclaimed funds.

The parties have also shown that serious questions of fact and law exist, particularly with regard to the accuracy of the billing records and entitlement to certain overtime wages, as well as the appropriateness of any liquidated damages under the FLSA . These factual and legal issues weigh in favor of approving the Settlement Agreement.

Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation. Courts have held that the presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia Marketing, Ltd.*, 2017 WL 5900344 (D. Colo. Nov. 30, 2017). The Settlement Agreement provides compensation to class action and collective action members commensurate with actual overtime worked and their legal claims under the CMWA and/or the FLSA. Defendants will pay $178,612.75[2] into a common settlement fund to

---

[2] The parties note that they erroneously listed $167,368.87 as the settlement payment in their Joint Motion for Preliminary Approval (ECF No. 37 at 3). The correct figure was listed in

be disbursed to 88 pizza workers, with recovery ranging from $0.90 to $30,995.79. (ECF No. 43-1 at 4, 6–8.) The common settlement fund represents 100% of actual and liquidated damages, plus the incentive award and a lodestar calculation of attorneys' fees. (ECF No. 44 at 1.) The Settlement Agreement provides a significant and immediate benefit to the class, particularly given that many of the pizza workers are low-wage earners.

Finally, both parties have represented their view that the Settlement Agreement is fair and reasonable. The fact that no class member objects shows that the class also considers this settlement fair and reasonable. *See In re Dun & Bradstreet*, 130 F.R.D. at 372.

As set forth above, the Court finds that each of the factors weights in favor of finding that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court fully and finally approves the Settlement for purposes of Rule 23(e).

### III. *CY PRES* AWARD

The Supreme Court has not directly addressed the propriety of *cy pres* awards of unclaimed funds, but recently recognized their existence. *See Frank v. Gaos*, 139 S. Ct. 1041, 1047 (2019) (Thomas, J., dissenting).[3] The Tenth Circuit has recognized that

---

the proposed Settlement Agreement (ECF No. 37-1), which was preliminarily approved by the Court (ECF No. 40 at 5). The parties repeat their mistake and list the $167,368.87 amount in the Joint Motion (ECF No. 43 at 11) and the Fee Motion (ECF No. 44 at 9). However, they also list the correct settlement payment amount in the Joint Motion (ECF No. 43 at 4 n.1) and the Fee Motion (ECF No. 44 at 1). The parties confirmed at the Settlement Hearing that the correct amount is $178,612.75.

[3] There are two types of *cy pres* awards to third parties in class action settlements: (1) unclaimed funds are directed to third-party reorganizations, and (2) all settlement funds are directed to third-party organizations that address issues related to the underlying dispute instead of class members. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 742

the *cy pres* doctrine in class action settlements "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries," but has not otherwise expounded on the doctrine. *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)).

Courts approving *cy pres* awards in the Tenth Circuit generally require the *cy pres* beneficiary to be related to the nature of the plaintiff's claims. *Bailes v. Lineage Logistics, LLC*, 2016 WL 4415356, at *7 (D. Kan. Aug. 19, 2016) (internal quotation marks omitted and alterations incorporated); *see Childs v. Unified Life Ins. Co.*, 2012 WL 13018913, at *5 (N.D. Okla. Aug. 21, 2012). Courts also evaluate whether beneficiaries are "carefully chosen to account for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of silent class members, including their geographic diversity." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012). Courts reject *cy pres* awards when the

---

(9th Cir. 2017), *vacated on other grounds by Frank*, 139 S. Ct. at 1046. The first type is at issue in this case. In 2018, the Supreme Court granted certiorari to determine whether the second type of *cy pres* awards satisfy the requirement that a binding class settlement be fair, reasonable, and adequate. *Frank*, 139 S.Ct. at 1045. In that case, the lower court approved a $8.5 million settlement, the majority of which went to six *cy pres* recipients whose work would "indirectly benefit class members," while the remainder went to "incentive payments, attorneys' fees, and administrative costs and fees." *Id.* The settlement provided no monetary relief to the 129 million absent class members. Instead of deciding the issue, the Court remanded for the lower court to address plaintiffs' standing. *Id.* at 1046.

Justice Thomas dissented, explaining that he would reach the merits and reverse the approval of the *cy pres* award. He explained: "Whatever role *cy pres* may permissibly play in disposing of unclaimed or undistributable class funds, *cy pres* payments are not a form of relief to the absent class members and should not be treated as such (including when calculating attorney's fees). And the settlement agreement here provided no other form of meaningful relief to the class." *Id.* at 1047–48. While it is unclear how the other justices would view the two types of *cy pres* awards, at least one justice would disallow the second type, where the none of the settlement funds would be distributed to absent class members.

7

parties fail to identify a proposed beneficiary, or when the beneficiary is "so unrelated to the claims" that class members would not benefit. *Better v. YRC Worldwide Inc.*, 2013 WL 6060952, at *6 (D. Kan. Nov. 18, 2013); *Bailes*, 2016 WL 4415356, at *7.

The Settlement Agreement provides that any settlement checks not negotiated within 90 days of issuance are "Unclaimed Funds." (ECF No. 43-1 at 8.) The Class Administrator will forward Unclaimed Funds to the Tri County Health Network, a Section 501(c)(3) organization that advocates for labor rights of immigrant workers in Telluride, Colorado. (ECF No. 43 at 4.) The parties represented in a submission to the Court and at the settlement hearing that Tri County Health Network is an appropriate *cy pres* recipient because of its work with Spanish-speaking immigrant communities in Telluride, Colorado. (ECF No. 39.) The Court notes that a number of the class members are Spanish-speaking immigrants. The Tri County Health Network recently received a grant from the Colorado Bar Association to provide translation and interpretation services between local lawyers and Spanish-speaking workers as part of its mission to serve the immigrant community in Telluride, and has committed to using funds from the *cy pres* award to further efforts to serve the immigrant community in Telluride. (*Id.*)

The Court finds that the *cy pres* award directing Unclaimed Funds to the Tri County Health Network is fair and reasonable, and the next best use of fund to provide an indirect class benefit.

## IV. INCENTIVE AWARD

When considering the appropriateness of an award for class representation, the

Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The parties propose that Mr. Diaz receive $5,000 as an incentive payment. (ECF No. 91 at 8.) Mr. Diaz spent time and effort working on the case with counsel against his employer over the course of a year-and-a-half of litigation. The litigation yielded individual payouts ranging from $0.90 to $30,995.79 to a group of low-wage hourly employees. Mr. Diaz's commitment to the case, the personal risk of being discharged that he undertook pursuing this litigation, and the outcome achieved warrants a significant award in this case. *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117 (D. Colo. 2016) (finding a service award appropriate where an immigrant plaintiff "took a substantial risk in coming forward with reports of Defendants' wage and hour law violations"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

The Court finds the incentive payment of $5,000 very reasonable, given Mr. Diaz's participation in the case and the overall recovery in this case, and thus approves the $5,000 incentive award to Mr. Diaz.

## V. ATTORNEYS' FEES

When considering the appropriateness of an attorneys' fees award, the Court considers the "*Johnson* factors": (1) the time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys, (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979).

In common fund cases, attorneys' fees may be based on a percentage of the fund, rather than lodestar. *See Aragon v. Clear Water Products LLC*, 2018 WL 6620724, at *4 (D. Colo. Dec. 18, 2018). A 33% fee award falls within the norm for these types of cases. *See* Stuart J. Logan *et al.*, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) (reporting that the percentage of class recovery consumed by attorneys fees under $10 million averages between 30.4% and 31.9%, based on a survey of 1,120 cases); *Nilson v. York Cnty.*, 400 F. Supp. 2d 266, 281 (D. Me. 2005) (collecting cases and finding that the median for attorneys' fees awards in class action settlements was around 30%).

Plaintiff's counsel seeks an attorneys' fee award totaling 33% of the common settlement fund, or $58,942.21. Counsel spent an estimated 102.65 hours on this matter

over the course of a year-and-a-half, time which counsel could have spent litigating other non-contingency cases. The parties engaged in informal discovery and detailed settlement negotiations. The Court finds that the requested amount of fees is reasonable considering the effort expended on this case by class counsel, the risks and difficulties inherent in this sort of litigation, the discovery undertaken, and the skill required and dedication displayed over the litigation of this matter.

Moreover, counsel's requested attorneys fees are reasonable given his lodestar fees and the degree of success achieved in this case. The lodestar figure is calculated by multiplying a reasonable hourly rate by the hours reasonably expended. Counsel spent 102.65 hours on this case. The $300 hourly rate charged by class counsel is very reasonable, considering the geographic market and counsel's experience. Using the lodestar method, the attorney's fees in the case would amount to $30,795. Counsel also incurred $630 in costs, which the Court finds very reasonable and appropriate, and notes that it has rarely seen a case litigated with fewer billed costs. *See Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("[A]n attorney who creates or preserves a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred."). Thus, the lodestar including attorneys' fees and costs would be $31,425, an amount that the Court finds reasonable given the time and effort spent in litigating this case.

The Court also finds that the requested multiplier of 1.86 (or 86%) is appropriate in light of the result achieved for the pizza workers. Significantly, the common fund represents 100% of individualized damages of the pizza workers, and the pizza workers will receive nearly 80% of the funds to which they are entitled, after accounting for

payment of attorneys' fees. This is an outstanding result for the Class, and weighs very heavily in favor of approving the amount of fees requested. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) (noting that "the amount of recovery, and end result achieved are of primary importance" when considering what constitutes a reasonable attorney fee). The settlement was achieved relatively quickly and, in the event that individual settlement checks are not deposited, remaining funds will not revert to Defendants but rather go to a community organization that will further benefit the community of which many pizza workers are a part. Given those results, the Court finds that a 1.86 multiplier is justified. *See Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (finding reasonable an attorneys' fees and costs award of 37% that represented a 1.77 multiplier of the lodestar).

Having considered the applicable *Johnson* factors, the Court finds that $58,942.21 in attorneys' fees and costs fair and reasonable, and the Court thus grants the Fee Motion.

## VI. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The parties' Joint Motion for Final Approval of Class and Collective Action Settlement (ECF No. 43) is GRANTED;

2. Plaintiff's Motion for Attorney Fee (ECF No. 44) is GRANTED;

3. The parties' Settlement Agreement (ECF No. 43-1) is APPROVED;

4. Plaintiff Victor Diaz is AWARDED an incentive award for serving as the class representative in the amount of $5,000;

5. Plaintiff's counsel is AWARDED attorneys' fees and costs in the amount of $58,942.21;

6. No later than **May 31, 2019**, Defendants SHALL DEPOSIT the settlement payment of $178,612.75 into a fund to be administered by the Class Administrator;

7. No later than **June 10, 2019**, the Class Administrator shall mail settlement checks to Plaintiff, opt-in plaintiffs, and Rule 23 class members identified in the Settlement Agreement; a check for the incentive award to recipient Victor Diaz; and a check for attorneys' fees and costs to Plaintiff's Counsel;

8. Consistent with the Settlement Agreement, Defendants SHALL PAY all settlement administration costs;

9. The Court SHALL RETAIN jurisdiction over the interpretation and implementation of the Settlement Agreement; and

10. The Clerk of the Court SHALL TERMINATE the case. The parties shall bear their own costs except as provided above.

Dated this 21st day of May, 2019.

BY THE COURT:

William J. Martinez
United States District Judge